UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NISHA PALACIO, <br><br> Plaintiff, <br><br> v. <br><br> MEDICAL FINANCIAL SOLUTIONS, <br><br> Defendant. | No. 21 CV 1288 <br><br> Judge Manish S. Shah |

**MEMORANDUM OPINION AND ORDER**

Defendant Medical Financial Solutions sent plaintiff Nisha Palacio statements to collect money she owed to Amita Health, a facility where she'd received medical treatment. Those statements did not contain certain disclosures that debt collectors are required to include in their communications under the Fair Debt Collection Practices Act. Palacio filed suit, but because defendant was not acting as a debt collector, it was not subject to the Act and is entitled to judgment as a matter of law.

**I.  Legal Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" show that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). I construe all facts and reasonable inferences in favor of the nonmoving party. *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020). But the moving party is entitled to summary judgment when the nonmoving party fails to make "a sufficient showing on an essential element" of her case for which

she has the burden of proof. *Celotex*, 477 U.S. at 323. "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## II. Local Rule 56.1 and Evidentiary Issues

Local Rule 56.1 "aims to make summary-judgment decisionmaking manageable for courts." *Kreg Therapeutics, Inc. v. VitalGlo, Inc.*, 919 F.3d 405, 415 (7th Cir. 2019). The rule requires the moving party to file a statement of facts that demonstrates its entitlement to judgment as a matter of law. *See Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014); N.D. Ill. Local R. 56.1(a)(3). The nonmoving party must file a response to that statement and may provide a separate statement of additional facts. *Petty*, 754 F.3d at 420; N.D. Ill. Local R. 56.1(b)(3). Both statements of facts and statements of additional facts must consist of concise numbered paragraphs, supported by citations to specific pages in the evidentiary record. *See* N.D. Ill. Local R. 56.1(d)(1)–(2). Evidence supporting or opposing summary judgment must be admissible if offered at trial, although depositions and other written testimony can substitute for live testimony. *Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 460 (7th Cir. 2014).

Any fact not properly controverted is deemed admitted. N.D. Ill. Local R. 56.1(e)(3); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). If the responding party disagrees with the other party's fact, it must cite specific parts of the record disputing the fact and "concisely explain how the cited material controverts the asserted fact." N.D. Ill. Local R. 56.1(e)(3). Facts that a party raises in a Local Rule 56.1 response that do not controvert the asserted fact, and that are not included

in the party's statement of additional facts, are stricken. *See* N.D. Ill. Local R. 56.1(e)(2). The parties' briefs must cite directly to their statements of fact and not to the underlying exhibits. N.D. Ill. Local R. 56.1(g).

Palacio did not abide by Local Rule 56.1. In her responses to defendant's statement of material facts, she cites entire exhibits without giving page numbers, *see* [27] ¶¶ 22, 23, 33,[1] and refers to exhibits by their contents instead of by their docket numbers or other record designation. *See* [27] ¶¶ 4, 7, 9–19, 36. Plaintiff's response brief is also replete with citations to exhibits, instead of the required citations to her statement of material facts. *See* [26]. Indeed, it contains no citations to the statement of material facts. Although the evidentiary record in this case is only about 150 pages and it wasn't much of a truffle hunt[2] to understand plaintiff's presentation, plaintiff's counsel has no excuse for not following the local rule. Local Rule 56.1 is not a mere technicality. I enforce it here, and because of plaintiff's failure to comply, I treat defendant's statement of the facts as admitted.

**III.   Facts**

Medical Financial Solutions contracts with Amita Health to provide so-called "early-out" services to patients, which means they work with Amita from the get-go to provide non-medical services. [27] ¶ 13.[3] On the front-end, they help with

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number.

[2] *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

[3] The facts are largely taken from defendant's statement of material facts, [20], and defendant's response to plaintiff's statement of additional material facts, [29]. Where plaintiff

pre-registration, registration, insurance verification, authorization of physician referrals, and figuring out how patients will pay (pre-payment, self-payment, insurance coverage, etc.). [27] ¶ 10. Throughout a patient's treatment and shortly after a patient's discharge, they help with other services: analyzing and assembling charts, auditing insurance coding, managing records, ensuring that physician dictation of required reports is accurately transcribed, and ensuring that all charges are included in a bill before it is sent. [27] ¶ 11. Finally, once the patient has been discharged, they help with billing, payment processing, managing an insurer's denial of coverage or its underpayment for coverage, providing customer service to the patient billing department, releasing records to authorized recipients, managing credits, and coordinating with third-party collection agencies for debts in default. [27] ¶ 12.

These services are documented in a Master Professional Services Agreement between Amita and Medical Financial Solutions. [22].[4] Two sections of the agreement are at issue here: the "Dependent Services—Acute Care" section, [22] at 2–9, and the

---

attempted to dispute a fact but cited exhibits that do not contradict defendant's version of the facts, I accept defendant's version. N.D. Ill. Local R. 56.1(e)(3).

[4] The relevant portions of the Master Professional Services Agreement, [22], should be unsealed. *See Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) (citations omitted) ("In civil litigation[,] only trade secrets, information covered by a recognized privilege (such as the attorney-client privilege), and information required by statute to be maintained in confidence (such as the name of a minor victim of sexual assault), [are] entitled to be kept secret on appeal."). Commercially sensitive information can be kept secret at the discovery stage, but general interests in commercial advantage and privacy aren't sufficient reasons to keep information relevant to judicial decision-making secret. *See id.* at 545. Defendant must file a public version of the exhibit, redacting irrelevant or trade-secret information, but ensuring that the sections cited in this opinion are publicly available. Defendant shall file the public version by July 18, 2022.

"Dependent Services—Provider" section, [22] at 10–15. Bullet points under the "Dependent Acute Services" and "Dependent Provider Services" sections ("Supplier shall provide the following…[s]ervices") read, [22] at 7, 14:

- **Bad Debt Management**—Manage patient bad debt through internal means and/or third party vendors and maintain documentation to support bad debt logging.

- Bad Debt Management (Self-Pay Collections)—Manage patient bad debt logging through internal means and/or third party vendors and maintain documentation to support bad debt logging.

According to its director of operations, Medical Financial Solutions outsources bad debt management to third-party vendors and does not collect on bad debt. [20-3] at 10:15–20, 11:1–6. The director of operations also said that "bad debt" meant debt in default. [20-3] at 11:11–24, 12:1. In his declaration, he reiterated that Medical Financial Solutions "does not collect on bad debt or defaulted accounts," [20-2] ¶ 11, doesn't report patient accounts to credit bureaus, [20-3] ¶ 13, and outsources bad-debt management to third parties, [20-2] ¶ 14. He also explained how a debt goes from a debt owed to a debt in default: Amita writes off the account receivable from its ledger and "make[s] the determination to outsource the 'bad debt' account to a third-party collection agency." [20-2] ¶ 12.

Nisha Palacio received medical treatment from Amita Health in June 2020. [29] ¶ 1. Amita sent three statements to Palacio, telling her she owed $495. [29] ¶¶ 2–4 (citing [1-1]). The statements were sent in September, October, and November, respectively, and each said the payment was due roughly a month after the statement date. [1-1]. In December and January, Medical Financial Solutions sent statements

5

to plaintiff that said she owed $495. [27] ¶¶ 20, 24. The statements read, in relevant part, [27] ¶¶ 20, 25:

> "You have an active balance of **$495.00** with **AMITA Health**. To assist you in resolving this balance, **AMITA Health** has sent your account to Medical Financial Solutions. The amount due of **$495.00** is not currently in default…If you are unable to remit payment in full at this time, you may contact Medical Financial Solutions to establish payment arrangements to resolve this unpaid balance as soon as possible…AMITA Health has a Financial Assistance Policy for those who qualify."

The statements were accompanied by a letter from Amita, which said, "AMITA Health has partnered with R1 RCM [Medical Financial Solutions], a leading Revenue Cycle Management provider, to offer patients exceptional experiences related to patient statements and remittance processing." [27] ¶ 22, 28.[5] No interest was charged on the account. [27] ¶ 30. Plaintiff made no payment on the account, nor did she respond or take any action when she received the statements. [27] ¶¶ 31–32. Plaintiff testified that her parents saw the envelopes from Medical Financial Solutions, leading her to explain to them that she was being contacted by (what she believed to be) a debt collector. [20-1] at 39:6–10, 41:4–15; [27] ¶ 34. She sued Medical Financial Solutions, claiming that they didn't comply with various requirements of the Fair Debt Collection Practices Act, including: failing to disclose that the letter was "an attempt to collect a debt and any information would be used for that purpose," not informing plaintiff of her rights in the first letter, using "unfair and unconscionable means" to collect the debt, misleading her by saying the debt wasn't

---

[5] Plaintiff disagrees with this statement and cites to her affidavit (without giving a page number). [27] ¶ 22. I disregard this attempt to dispute defendant's assertion because it violates Local Rule 56.1(e)(3).

in default when it was, and putting its name (which suggests it's a debt collector) on the envelope. [1] ¶¶ 37–41 (alleging violations of 15 U.S.C. §§ 1692e, e(11), f(8), and g(a)).[6] Defendant moved for summary judgment. [19].

## IV. Analysis

Congress passed the Fair Debt Collection Practices Act to eliminate abusive debt collection practices and ensure that debt collectors who didn't engage in such practices were not competitively disadvantaged. 15 U.S.C. § 1692(e). The Act prohibits a slew of practices: communicating with debtors at odd hours of the day and night, communicating with third parties about another person's debt, harassing people in connection with the collection of a debt, and making false or misleading misrepresentations in connection with the collection of a debt. 15 U.S.C. § 1692c, d, e. The latter prohibition requires debt collectors to make certain disclosures: that they are collecting a debt; that any information they obtained will be used for that purpose; and, in subsequent communications, that they are a debt collector. § 1692e(11). A debt collector who fails to make those disclosures is on the hook for monetary damages. *See* § 1692k.

### A. Standing

Before a federal court can hear a case, "a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury

---

[6] In her complaint, plaintiff also alleged defendant violated the Illinois Consumer Fraud Act. [1] ¶¶ 42–45. Defendant moved for summary judgment on that claim, and plaintiff dropped it in her response brief. *See* [26] at 6 ("Plaintiff, through discovery, accepts that it will not be able to establish a case under the Illinois Consumer Fraud Act.").

7

would likely be redressed by the requested judicial relief." *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021) (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020)). Defendant does not challenge plaintiff's standing, but I have an "independent duty to ensure that this case is properly in federal court." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021) (quotations and citation omitted).

To establish standing in the FDCPA context, a plaintiff must plausibly allege that defendant's statutory violation led her to take some detrimental step causing a real, concrete harm. *See Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 710 (7th Cir. 2021); *see also Larkin v. Fin. Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1066 (7th Cir. 2020). The mere allegation of a statutory violation itself—whether based on a procedural or substantive provision of the statute—is not enough. *See Smith*, 986 F.3d at 710; *Markakos v. Medicredit, Inc.*, 997 F.3d 778, 780 (7th Cir. 2021); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 331–32 (7th Cir. 2019). "Intangible" injuries, like reputational harm and disclosure of private information, can be concrete. *See Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938 (7th Cir. 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204–05 (2021)). And Congress enacted the FDCPA to prevent exactly those sorts of harms, among others. *See* 15 U.S.C. § 1692(a) ("Abusive debt collection practices contribute to…invasions of individual privacy.").

Plaintiff's parents saw the letters from Medical Financial Solutions, leading her to explain to them that she was being contacted by (what she believed to be) a

8

debt collector because (she believed) her medical debt was in default. [20-1] at 39:6–10, 41:4–15; [27] ¶ 34. Disclosure to a third party, as well as the reputational harm that comes from explaining to others that you're in significant financial trouble, is sufficiently concrete to confer standing. *See Pierre*, 29 F.4th at 938.

> B. **Whether Medical Financial Solutions Was Acting as a "Debt Collector"**

The Act distinguishes between creditors and debt collectors. *See Schlosser v. Fairbanks Cap. Corp.*, 323 F.3d 534, 536 (7th Cir. 2003); *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009). It only governs the latter, defined as any person who regularly collects or attempts to collect debts owed to another, but excluding, among other things, 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added):

> [A]ny person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity...*concerns a debt which was not in default at the time it was obtained by such person*....

Medical Financial Solutions says it isn't a debt collector because it "does not collect on bad debt or defaulted accounts." [27] ¶ 14; *see* [19] at 5. Plaintiff notes, though, that the Master Professional Services Agreement between defendant and Amita gives defendant the authority to act as a debt collector. [26] at 3–4. Specifically, the agreement provides that defendant will "manage patient bad debt through *internal means* and/or third party vendors and maintain documentation to support bad debt logging." [22] at 7, 14. But the fact that defendant is allowed to act as a debt collector doesn't mean defendant is a debt collector, and when asked about this provision of the agreement, the operations director said that defendant does not collect on bad debt. [20-3] at 11:1–6. In other words, defendant has gone with the

9

second option in the agreement: outsourcing collection instead of managing it internally. That provision of the agreement does not undermine defendant's position that it doesn't act as a debt collector.

Even assuming defendant is a debt collector, plaintiff must show that defendant was acting as a debt collector, instead of a creditor, for the purposes of her particular debt. *See Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010) (the Act only applies if "the communication by the debt collector that forms the basis of the suit [was] made 'in connection with the collection of any debt.'"). An entity can act as both a creditor and a debt collector, but for the purposes of a particular debt, the categories are mutually exclusive. *See Schlosser*, 323 F.3d at 536. The issue here is whether Palacio's debt was in default when Medical Financial Solutions obtained it. *See* § 1692a(6)(F)(iii). If it was, then defendant was acting as a debt collector vis-à-vis Palacio. If it wasn't, defendant falls into the § 1692a(6)(F)(iii) exclusion above and was acting as a creditor (i.e., wasn't governed by the Act). *See Schlosser*, 323 F.3d at 536; *Ruth*, 577 F.3d at 796 (party's status under the Act "turns on whether the debt was in default at the time it was acquired").[7]

The Act doesn't define "default," and the court of appeals hasn't interpreted it. But the general consensus from other courts is that there is no bright-line definition

---

[7] The rationale behind distinguishing between debt collectors and creditors is that the two have different incentives. Creditors are "generally…restrained by the desire to protect their good will when collecting past due accounts," whereas independent collectors are likely to have "no future contact with the consumer and often are unconcerned with the consumer's opinion of them"—and therefore more likely to use abusive tactics. *Ruth*, 577 F.3d at 797 (quoting S. Rep. 95-382, at 2) (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696.

10

of default, with one exception not relevant here.[8] Whether a debt has defaulted is instead determined on a case-by-case basis. *See Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 87 n.5 (2d Cir. 2003); *De Dios v. Int'l Realty & Investments*, 641 F.3d 1071, 1074–75 (9th Cir. 2011); *Church v. Accretive Health, Inc.*, 2015 WL 7572338, at *8–9 (S.D. Ala. Nov. 24, 2015); *Prince v. NCO Fin. Servs., Inc.*, 346 F. Supp. 2d 744, 747 (E.D. Pa. 2004).

The main way to determine whether a debt was in default is to look to contractual agreements between the debtor and money-collecting entity. *See Alibrandi*, 333 F.3d at 87 n.5; *De Dios*, 641 F.3d at 1074–75; *Wagoner v. NPAS, Inc.*, 456 F. Supp. 3d 1030, 1041 (N.D. Ind. 2020); *cf. Bailey v. Sec. Nat'l Serv. Corp.*, 154 F.3d 384, 387–88 (7th Cir. 1998). A second way is by relying on the definition of default in federal statutes and regulations that govern similar types of loans. For student-loan collections, for instance, some courts have imported the definition of "default" from the Federal Family Educational Loan Program (after 270 days of delinquency, 34 C.F.R. § 682.200(b)). *Alibrandi*, 333 F.3d at 87. Federal regulations provide different definitions of default for other types of loans: farm loans (30 days, 7 C.F.R. § 762.141(a)), loans from FDIC institutions to their employees (90 days, 12. C.F.R. § 336.3(c)), and other types of student loans (270 days, 34 C.F.R. § 685.102(b)). *Alibrandi*, 333 F.3d at 87. But there is no similar federal regulation for the debt at

---

[8] That exception is when a creditor communicates to the debtor that the debt is in default, even when it isn't. The Act then treats that debt as defaulted. *See Schlosser*, 323 F.3d at 537–38; *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 361–62 (6th Cir. 2012); *cf. Dunham v. Portfolio Recovery Assocs., LLC*, 663 F.3d 997, 1002 (8th Cir. 2011).

issue here and the parties haven't provided the contract between Palacio and Amita. Defendant instead asserts that Palacio's loan was not in default when defendant acquired it. [27] ¶ 16 (citing [20-2] ¶ 17). Palacio attempts to dispute this by pointing to the deadlines on the financial statements Amita sent her, but this is unresponsive.[9] [27] ¶ 16. An overdue payment is not necessarily a debt in default. *Alibrandi*, 333 F.3d at 86–87 (an outstanding debt becomes a debt in default "only after some period of time").[10] Because plaintiff failed to properly controvert defendant's statement and no record evidence contradicts it, I accept for purposes of summary judgment that Palacio's account was not in default when it was transferred.

Plaintiff says this finding doesn't end the inquiry. She argues that defendant's status as a licensed collection agency in Illinois means it qualifies as a debt collector

---

[9] It is also improperly disputed because Palacio writes, "See the Deadlines on Amita Statements." [27] ¶ 16. Local Rule 56.1(e)(3) requires a party to cite specific evidentiary material, and Local Rule 56.1(b)(2) requires the party to attach the cited evidentiary material. Local Rule 56.1(d)(3) requires cited evidentiary material to be included as numbered exhibits with the statements of fact.

[10] At least two district courts in this circuit disagree, in certain circumstances. *See Magee v. AllianceOne, Ltd.*, 487 F. Supp. 2d 1024, 1027–28 (S.D. Ind. 2007); *Wagoner*, 456 F. Supp. 3d at 1037–38. One of those courts has held that when a contract gives the creditor unilateral authority to decide when a debt is in default, the court should disregard that provision and apply the dictionary definition of default ("[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due"). *Magee*, 487 F. Supp. 2d at 1027–28. The other court has said that if a contract doesn't make clear what constitutes default, the court should use the dictionary definition. *Wagoner*, 456 F. Supp. 3d at 1037–38. As the Second Circuit pointed out, this approach undermines the pro-debtor objectives of the Act by exposing debtors to measures like "acceleration, repossession, increased interest rates, and negative reports to credit bureaus" immediately after they miss a single payment. *Alibrandi*, 333 F.3d at 87. I agree with the Second Circuit. In any event, resort to a dictionary in this case is unnecessary because whether Palacio's debt was in default is not determined by reference to some unilateral authority in a contract. Here, defendant properly asserted that the debt was not in default (and said so in its communications to Palacio, [27] ¶ 20), and plaintiff failed to properly controvert that fact. [27] ¶ 16.

12

under the Act. *See* [26] at 4–5. But the definition of "collection agency" under state law is different from the definition of "debt collector" under federal law. In Illinois, a "collection agency" is "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in the collection of a debt." 225 ILCS 425/2. That means an entity that acquires debt before default is still a collection agency, so long as it later collects. Under federal law, though, that entity would not be considered a "debt collector" because the debt was not in default when acquired. An entity's Illinois registration is not proof of its federal status as a debt collector.

Finally, plaintiff argues that the payment statements themselves (those from Amita and from defendant) show defendant was acting as a debt collector. She emphasizes two features. First, the statements from Amita had payment deadlines and said "prompt payment" was expected. [26] at 1 (citing [1-1]). Plaintiff says that her failure to meet those deadlines means she was in default, so all subsequent correspondence from defendant was about debt in default. [26] at 5. But as I explain above, an overdue payment is not necessarily a debt in default and wasn't in this case. Second, plaintiff argues that because Amita's statements didn't mention defendant's name, defendant could not have been involved with the account "from its inception," in contrast to defendant's claim. *See* [26] at 4. Failure to mention defendant's name says nothing about defendant's involvement, though. And even if defendant weren't involved in plaintiff's account from the beginning, defendant could still have acquired the debt pre-default.

13

In sum, it doesn't matter that defendant is a licensed collection agency or that Amita's statements set payment deadlines and asked for "prompt payment." Plaintiff's debt was not in default when defendant acquired it, and under the Act, that is enough to conclude that defendant was not acting as a debt collector in relation to plaintiff.

## V. Conclusion

Defendant's motion for summary judgment, [18], is granted. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 14, 2022